IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TERRENCE DALE BURNS, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:17-CV-2949-AT |
| FULTON COUNTY and ATLANTA : | |
| V.A. MEDICAL CENTER, : | |
| : | |
| Defendants. : | |

## **ORDER**

Plaintiff Terrence Burns is a *pro se* litigant who filed his Complaint along with an application for leave to proceed *in forma pauperis*. Magistrate Judge King granted his application, and she further directed this case to be submitted to this Court for a frivolity determination pursuant to 28 U.S.C. § 1915(e)(2). (*See* Doc. 2.)

**I. STANDARD**

Under 28 U.S.C. § 1915(e)(2), a federal court must dismiss a case proceeding *in forma pauperis* at any time if it determines that the plaintiff's allegation of poverty is untrue, or if it determines that the plaintiff's action or appeal "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." A dismissal pursuant to Section 1915(e)(2) may be made *sua sponte*

by the Court prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering frivolous complaints. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

A complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Id.* at 325. In other words, a complaint is frivolous when it "has little or no chance of success" – for example, when it appears from the face of the complaint that the factual allegations are "clearly baseless" or that the legal theories are "indisputably meritless." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (internal quotations omitted).

A complaint fails to state a claim when it does not include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint "must contain something more . . . than . . . statement of facts that merely creates a suspicion [of] a legally cognizable right of action"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 680-685 (2009); *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1187-88 (11th Cir. 2002) (stating that "conclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal"). While the Federal Rules do not require specific facts to be pled for every element of a claim or that claims be pled with precision, "it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the

material elements necessary to sustain a recovery under some viable legal theory.'" *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007). A plaintiff is required to present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "'naked assertion[s]' devoid of 'further factual enhancement'" do not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court recognizes that Mr. Burns is appearing *pro se*. Thus, his Complaint is more leniently construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted); *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). However, nothing in that leniency excuses a plaintiff from compliance with the threshold requirements of the Federal Rules of Civil Procedure. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1998), *cert. denied*, 493 U.S. 863 (1989). Nor does this leniency require or allow courts "to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

## II. ALLEGATIONS IN THE COMPLAINT

Mr. Burns filed a Complaint and attached several documents to the Complaint. The following facts are a summary of the allegations on the face of the Complaint.

Mr. Burns suffered from cataracts. (Compl., Doc. 3 at 2.) In 2013, a medical professional at the Atlanta Eye Clinic performed a procedure to remove the cataracts in Mr. Burns's right eye, and the procedure was successful. (*Id.*) At some point in 2013, Mr. Burns stopped receiving treatment from the Atlanta Eye Clinic and started receiving treatment from Dr. Bonnie Germain at the Atlanta V.A. Hospital for his eyes. (*Id.*) He continued treatment with Dr. Germain through 2016. (*Id.*)

The vision in Mr. Burns's left eye was "clear and good," but he began experiencing dryness in that eye. (*Id.*) In 2014, Dr. Germain told Mr. Burns that cataracts were causing the dryness in his left eye. (*Id.*) She told him that she could perform minor surgery to remove the cataracts and clear up the stoppage in his tear duct, which would then stop the dryness. (*Id.*) She also explained that this surgery would prevent any further vision loss. (*Id.* at 3.) When Mr. Burns asked her if he would lose his sight afterward, she said no and that he would see about the same as before. (*Id.*)

During a pre-operation examination, Dr. Germain told Mr. Burns that she had discovered double cataracts in his left eye – one cataract developing on top of the other. (*Id.*) She said this would not be a problem and asked if he wished to proceed with the surgery. (*Id.*) Mr. Burns said yes, although he states that he did not know the risks at the time and was not told of any risks. (*Id.*)

On April 15, 2015, Dr. Germaine performed the surgery on Mr. Burns's left eye. (*Id.* at 1.) Immediately after surgery, Dr. Germain told Mr. Burns that she

4

thought the surgery went well and that she had never performed this type of surgery before.[1] (*Id.* at 3.) He learned for the first time after surgery that Dr. Germain cut away the front of his left eye and replaced it with a plastic cover. (*Id.*)

Mr. Burns experienced a number of complications with his left eye after surgery. He was told that swelling would last less than a month after surgery, but his eye remained swollen up to eight months after surgery. (*Id.* at 4.) Approximately one to three months after surgery, he complained to Dr. Germain about the swelling and inflammation of his left eye and also that he could not see at all. (*Id.*) Approximately six months after surgery, Mr. Burns was rushed to the V.A. emergency room because he had significant pressure in his left eye and it was filled with blood. (*Id.*) Additionally, the plastic cover that was placed over his eye during surgery has since sunken into his eye. (*Id.* at 3, 6.) Mr. Burns consulted with another medical professional, Dr. Patel, who confirmed that corrective surgery would be "highly risky" because the plastic cover had permanently sunk into his eye. (*Id.* at 6.)

---

[1] The Court takes judicial notice of the webpage on Emory Eye Center's website that shows Dr. Germain's qualifications as a member of the faculty and physicians. *See* Fed. R. Evid. 201. The webpage is located at this address: http://www.eyecenter.emory.edu/faculty/germain.htm. The webpage shows that Dr. Germain completed her residency in ophthalmology in 2010 and that she is Board Certified by the American Board of Opthalmology. She lists three areas of clinical interest, one of which is surgical management of cataracts. This information calls into question the veracity of Mr. Burns's allegation that Dr. Germain commented she had never performed this type of surgery before. On the other hand, Dr. Germain may have made this comment with respect to double cataract surgery in particular, meaning that she had never performed double cataract surgery before. Nevertheless, the Court still accepts Dr. Burns's allegation as true for purposes of this order.

Mr. Burns alleges that the surgery performed by Dr. Germain at the Atlanta V.A. Hospital on April 15, 2015 caused him to lose sight in his left eye to the point that he is now blind in that eye. (*Id.* at 1.)

Mr. Burns also alleges "Deception By V.A. Staff" (*Id.* at 5), and he states the following facts in support of this allegation: Mr. Burns complained to the V.A. about the surgery by Dr. Germain and his subsequent loss of sight, and he eventually met with a man identified as Mr. Childs in the Office of the General Counsel.[2] (*Id.*) Mr. Childs provided Mr. Burns with "a set of V.A. Tort Claims Forms" and instructed him to complete and return the forms. (*Id.*) Mr. Childs also told Mr. Burns that other units at the V.A. would later assist him and his family with adjusting to his change in vision. (*Id.*) At a later date, Mr. Burns received a call from Helen Hasting, who told him that she was investigating the claim and asked him questions about the case. (*Id.*) She assured him that he would receive compensation for his losses. (*Id.*) She also encouraged him not to retain a private attorney because he would have to pay attorney's fees out of any compensation he received from the V.A. (*Id.*) Mr. Burns alleges that he received a reply from the V.A. Claims Offices nearly two years later, and the reply letter stated that his claim was denied. (*Id.*) He alleges that the letter stated his claim was denied because "the Doctor was [a] practicing ophthalmologist, and that I was considered legally blind." (*Id.*)

---

[2] Mr. Burns styled this entity as the "General Counselor Office" in the Complaint, but the Court corrects this to say "Office of the General Counsel" based on the U.S. Department of Veterans Affairs website. *See* https://www.va.gov/OGC/DistrictOffices.asp.

Mr. Burns alleges that he currently has to administer "5 steroid eye-drops, to be used 3 [times per] day, 2 Humari injections, and 3 types of pills . . . because of injury due to malpractice [and] neglectfulness of surgery." (*Id*. at 6.) He filed the current Complaint on August 7, 2017.

### III.  DISCUSSION

Mr. Burns is suing Fulton County and the Atlanta V.A. Hospital, a division of the United States government, for medical malpractice based on the cataract surgery performed by Dr. Germain on April 15, 2015 at the Atlanta V.A. Hospital.

The Court first addresses Fulton County's status as a defendant. Mr. Burns makes no specific allegations regarding Fulton County. He does not allege any facts linking Fulton County to the surgery at issue, other than the surgery taking place in Fulton County. These allegations are not sufficient to state a claim. Thus, Mr. Burns fails to state a claim against Fulton County on which relief may be granted.

The remaining defendant is the Atlanta V.A. Hospital, which is effectively the United States. The United States generally has sovereign immunity from suits filed against it, but the big exception to that rule is the Federal Tort Claims Act ("FTCA"). Under the FTCA, the United States specifically waives its sovereign immunity for certain suits in tort, including medical malpractice suits. *See Phillips v. United States*, 260 F.3d 1316, 1318 (11th Cir. 2001). "Generally, [] a court looks to state law to define the time limitation applicable to a federal claim only when Congress has failed to provide a statute of limitations for a

7

federal cause of action. . . . [But for] claims brought under the FTCA, Congress has expressly stated the applicable limitation period." *Id.* (cleaned up). "[T]he FTCA explicitly provides that a tort claim against the United States will be 'forever barred' unless (1) presented to the appropriate agency within two years after the claim accrues or (2) action is commenced within six months after the final denial of the claim by the agency to which it was presented." *Slater v. United States*, 175 F. App'x 300, 304 (11th Cir. 2006); *see also* 28 USC § 2401(b). When filing a medical malpractice claim under the FTCA, the limitations period begins to run "when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both [his] injury and its connection with some act of the defendant." *Id.*

Based on the facts alleged in the Complaint, Mr. Burns's claim against the United States appears to be time-barred. Mr. Burns alleges that he underwent cataract surgery on his left eye on April 15, 2015, and he further alleges that within one to three months after the surgery, his left eye was swollen and inflamed and he could not see out of it. He specifically alleges that he "complain[ed] to Dr. Germain" and asked "what have [sic] went wrong." (Compl., Doc. 3 at 4.) Construing the facts leniently, Mr. Burns was aware of both his injury, as well as its connection to Dr. Germain, within three months after the surgery, by July 15, 2015. Thus, to avoid his claim being time-barred by the FTCA, Mr. Burns would have had to file a medical malpractice claim with the appropriate agency – here, the Department of Veterans Affairs – no later than

8

two years after July 15, 2015 (i.e., by July 15, 2017). There are no allegations in the Complaint stating that Mr. Burns filed an administrative claim with the Department of Veterans Affairs by that date.

Mr. Burns attached several documents to the Complaint, including a letter from the Department of Veterans Affairs dated March 29, 2017. (*See* Doc. 3-2 at 2-11.) The letter states that the agency "made a decision regarding your entitlement to VA benefits." (*Id.* at 2.) It goes on to state that it denies Mr. Burns's request for compensation for the blindness in his left eye, and that his "current benefit payment will continue unchanged." (*Id.*) While at first glance this letter may appear to be the agency's denial of Mr. Burns's administrative *tort* claim, it is actually a denial of his administrative *benefits-related* claim. The distinction is an important one. Federal courts "have no jurisdiction over any decision of law or fact necessary to the provision of benefits by the Secretary to veterans or the dependents or survivors of benefits." *Slater v. United States*, 175 F. App'x 300, 305 n. 2 (11th Cir. 2006) (citing 38 U.S.C. § 511(a)). "[A] claim for service-related benefits is not a tort claim brought under the FTCA." *Id.*

Mr. Burns does not allege that he filed a tort claim with the Department of Veterans Affairs, nor does he attach any documentation showing that he did so. He merely states that he received "V.A. Tort Claims Forms," that he discussed a "claim" with Ms. Hasting over the phone, and that he received a reply from the "V.A. Claims Offices" that denied his claim. These allegations do not indicate that

Mr. Burns filed an administrative tort claim with the Department of Veterans Affairs within the applicable limitations period.

The Court notes that, assuming Mr. Burns's allegations are true, it is sympathetic to the serious injury that Mr. Burns suffered in this matter. The loss of sight is a particularly traumatic experience and has an ongoing impact obviously. Yet the Court is bound to strictly construe the limitations period under the FTCA, and Mr. Burns has not alleged facts demonstrating that his claim against the United States is timely. Accordingly, Mr. Burns has not stated a claim against the United States on which relief may be granted.

## IV. CONCLUSION

For the reasons stated above, the Court **DISMISSES** the Complaint pursuant to 28 U.S.C. § 1915(e)(2). The Clerk is **DIRECTED** to close the case.

In the event that Mr. Burns did timely file an administrative tort claim with the Department of Veterans Affairs,[3] the Court **GRANTS** Mr. Burns leave to file a proposed amended complaint for this limited purpose: adding allegations about his filing the tort claim (including the date of filing) and attaching relevant documentation regarding the tort claim (including the tort claim that was filed with the Department of Veterans Affairs and the determination letter from the

---

[3] In his Complaint, Mr. Burns appears to reference a letter from the Department of Veterans Affairs that is not attached to his Complaint. He alleges that his "claim" was denied because "the Doctor was [a] practicing ophthalmologist, and that I was considered legally blind." (Compl., Doc. 3 at 5.) However, the March 29, 2017 letter from the Department of Veterans Affairs, which Mr. Burns attached to the Complaint and which denied his request for benefits, does not state anything like this. (*See* Doc. 3-2 at 2.) The Court recognizes the possibility that Mr. Burns's allegation may be referring to a letter from the Department of Veterans denying his *tort* claim.

Department of Veterans Affairs). If Mr. Burns chooses to file a proposed amended complaint with this documentation, he must file it no later than September 29, 2017. Furthermore, if Mr. Burns files a proposed amended complaint by September 29, 2017, the Court **DIRECTS** the Clerk to re-submit this matter to the undersigned, and the Court will then review the proposed amended complaint pursuant to 28 U.S.C. § 1915(e)(2).

    **IT IS SO ORDERED** this 29th day of August, 2017.

_____
**Amy Totenberg**
**United States District Judge**